UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

YOLANDA K. MAYSHACK                           CIVIL ACTION NO. 05-0239

versus                                        JUDGE HICKS

JO ANNE B. BARNHART,                          MAGISTRATE JUDGE HORNSBY
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

# REPORT AND RECOMMENDATION

**Introduction**

Yolanda Mayshack ("Plaintiff") was born in 1969 and has a high school education. Her past work experience includes employment as a manager for McDonald's, working as a cashier and food preparer/cook. She alleges that she became disabled in 2002 due to scoliosis and pain in her back and neck. ALJ Larry Butler held a hearing and denied the claim based on a conclusion that Plaintiff could perform the requirements of her past work. Tr. 148. The Appeals Council remanded the case because of inconsistencies in the decision. Tr. 162.

On remand, the case was assigned to ALJ Nancy Griswold. She conducted a second hearing and issued a written decision that analyzed the claim pursuant to the five-step sequential analysis set forth in 20 C.F.R. § 404.1520 (governing claims for disability insurance benefits) and § 416.920 (parallel regulations governing claims for Supplemental Security Income) and described in Barnhart v. Thomas, 124 S.Ct. 376, 379-80 (2003). The

ALJ found that Plaintiff was not performing substantial gainful work (step one) and suffered from thoracic scoliosis and congenital cervical fusion that are severe impairments within the meaning of the regulations (step two) but that do not meet or medically equal a listing (step three). She then reviewed the evidence and concluded that Plaintiff had the residual functional capacity ("RFC") to perform a wide range of light work, reduced by her need to change position from standing to sitting for a few minutes in every hour.

Plaintiff's past work could not be performed by a person with such an RFC (step four), so the ALJ turned to whether Plaintiff had the ability to perform the demands of other jobs that exist in significant numbers in the economy (step five). If Plaintiff had been found capable of performing the full range of light work, Medical-Vocational Rule 202.21 would have directed a step-five finding of not disabled. Given the additional limitation included in Plaintiff's RFC, the ALJ could not rely solely on the Rule, but she did look to it as a framework for decision making. She also called on a vocational expert ("VE") who testified that a person of Plaintiff's age, education, work experience and RFC could perform jobs such as cashier II, ticket seller, order clerk and charge account clerk. The ALJ accepted that testimony and concluded that Plaintiff was not disabled. Tr. 14-22.

The Appeals Council denied a request for review. Plaintiff sought relief from this court pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, it is recommended that the Commissioner's decision be reversed and the case be remanded for further proceedings.

**Issues on Appeal**

The record included reports from multiple medical sources. Plaintiff complains on appeal that the ALJ: (1) gave too much weight to the report of consultative physician Robert Holladay, IV, M.D.; (2) did not afford adequate weight to the opinions of treating physicians Dr. Ejikeme Nwokolo and Dr. Wyche Coleman, Jr.; and (3) wrongfully rejected the opinion of the treating physicians without specific findings on the factors addressed in Newton v. Apfel, 209 F.3d 448 (5th Cir. 2000).

**Standard of Review; Substantial Evidence**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla and less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991). A finding of no substantial evidence is justified only if there are no credible evidentiary choices or medical findings which support the ALJ's determination. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).

**The Medical Reports**

The record includes three principal medical reports. The first was from Dr. Wyche Coleman, Jr., a treating physician. Dr. Coleman assessed Plaintiff as having scoliosis with life-long back discomfort that was worsened by a motor vehicle accident in March 2002. He

prescribed medication such as Celebrex and Ultracet. Tr. 130-31. Dr. Coleman completed an RFC assessment form and opined that Plaintiff could, in an 8-hour workday, sit for 20 minutes at a time without needing to change positions (for a total of one hour per day) and that she could stand/walk for 20 minutes at a time without needing to change positions (for a total of one hour per day). He found that Plaintiff could lift or carry no more than 10 pounds, and then only occasionally (meaning one to two hours per workday). He also assessed several other limitations, attributing all of them to pain and back deformity. He also estimated that Plaintiff would have to miss work "very frequently" due to exacerbation of pain or other symptoms and that, over time, her level of pain would increase. (Tr. 132-35)

Dr. Ejikeme Nwokolo completed an RFC assessment form dated July 2004. He assessed lifting and other restrictions similar to those offered by Dr. Coleman, but he opined that Plaintiff's ability to sit and stand/walk was even more limited than Dr. Coleman opined. He wrote that Plaintiff could sit or stand/walk for no more than 15 minutes at a time without needing to change positions and that she could, in an 8-hour workday, sit a total of zero hours and stand/walk a total of zero hours. He attributed these limitations to pain and noted that he had prescribed Plaintiff Celebrex, Flexoril, Vioxx and ibuprofen. He believed that Plaintiff would miss work "very frequently" and would see little, if any, improvement. Tr. 192-95.

Dr. Robert Holladay, an orthopedic surgeon, conducted a consultative examination of Plaintiff in May 2003. An MRI showed no evidence of disk herniation or spinal stenosis,

but there was evidence of congenital scoliosis in the thoracic and cervical spine. Plaintiff was then taking ibuprofen or Advil for her symptoms. Plaintiff had good balance and walked with no evidence of a limp, and Dr. Holladay observed no muscle spasms in her back. Dr. Holladay diagnosed chronic neck pain, chronic upper back pain and scoliosis of the thoracic spine with fusion of the cervical spine. He observed that the MRI of the spine was "within normal limits" although it did show the scoliosis. The exam did not indicate any abnormal neurologic findings. A pain questionnaire indicated some psychosocial reaction to the complaints of pain. A pain drawing showed markings over wide areas of the back and extremities, which Dr. Holladay wrote "are not in distribution consistent." (It appears this sentence ended prematurely in the report.)

With respect to the scoliosis, Dr. Holladay wrote: "The condition of scoliosis is considered to be a painless disorder. I am unsure I can document on [sic] objective basis of her current complaints of pain." Finally, Dr. Holladay concluded that Plaintiff could sit, stand or walk for periods up to eight hours in a workday and could work in those positions for at least one hour before she needed a position break. He also estimated that she was capable of lifting and carrying objects that weigh up to 30 pounds occasionally, and could frequently lift and carry 10-15 pounds.

The record also contains a report from Dr. Carl Goodman, who conducted a spinal evaluation in October 2002. Plaintiff reported that in March of that year she had been in a car accident during which her car rear-ended another at a speed of about 45 mph. Since the

wreck, she reported increased back problems and had been seen at the Schumpert Emergency Room, LSU Medical Center Clinic, by Dr. Coleman and by Dr. Anglin. A physical examination revealed no significant problems, although lumbar movement was limited due to low back pain. No spasm or sciatic nerve tenderness was noted. Review of an MRI showed scoliosis only. Dr. Goodman discussed exercise therapy with Plaintiff and advised her that he had no specific treatment to offer and that "she could be as active as desired." Tr. 186-87.

Dr. Anglin's records indicate that he treated Plaintiff after her car accident with conservative measures such as physical therapy and anti-inflammatory medicines such as Celebrex and ibuprofen. Plaintiff continued to have back pain nonetheless and said she was unable to continue working at McDonald's. Examination of her back found mild tenderness with back motility slightly limited. Tr. 188-89 and 191.

**Analysis**

ALJ Griswold did not specifically discuss the report from Dr. Coleman, a treating physician. She did write that ALJ Butler's decision had "effectively discussed the medical records through 8F, so there is no need for repetition here." Tr. 16. ALJ Butler had placed "minimal weight" on Dr. Coleman's statement because he found the record non-supportive of the extreme limitation opined by Dr. Coleman. In particular, ALJ Butler noted the absence of objective medical findings and the absence of muscle spasm, muscle atrophy, or neurological deficits. Tr. 153.

ALJ Griswold began her discussion of Dr. Nwokolo's report by describing him as "an Agency physician who did not examine the claimant, but reviewed the medical evidence." She also wrote: "Although Dr. Nwokolo is not the claimant's treating physician, he answered 'yes' when asked if he prescribed medications for her." Tr. 17. The attorney who represented Plaintiff in the agency proceedings wrote, in support of a request for Appeals Council review, that Dr. Nwokolo was not an agency physician but was actually a treating physician who was on the staff at LSU Medical Center where Plaintiff had received care. Tr. 196. The ALJ's (apparent) mistake may have been caused by the agency record's table of contents, which listed Dr. Nwokolo's assessment as a report "completed by DDS physician." Tr. 2.

ALJ Griswold found that Dr. Nwokolo had expressed opinions that were inconsistent with orthopedic reports cited elsewhere in the record. She also observed: "At the hearing, claimant sat for more than 15 minutes without a problem." Tr. 17. Counsel for Plaintiff points out that the hearing before ALJ Griswold commenced at 9:10 a.m. and ended at 9:20 a.m., so it lasted a mere 10 minutes. Tr. 216 and 225. Furthermore, about midway through the hearing, Plaintiff was permitted to stand up. Tr. 221. The attorney who was present at the hearing reports that Plaintiff did in fact stand at that time. Tr. 197. The ALJ also wrote that Dr. Nwokolo's sit/stand/walk limitations were conflicting. Tr. 17. The restrictions may have been extraordinary in degree, but they were not necessarily internally inconsistent. Finally, the ALJ found that the restrictions suggested by Dr. Nwokolo were not supported by the record because Plaintiff did not require pain management other than anti-

Page 7 of 12

inflammatories and a muscle relaxer, and Plaintiff reported that she maintained a household for herself and four children, attends church three times a week, and does some light housework. Tr. 18.

In contrast, the ALJ found Dr. Holladay's opinion "far more credible and persuasive." She particularly relied on Dr. Holladay's statement that scoliosis is considered to be a painless disorder and that he was unsure if he could document an objective basis for Plaintiff's complaints of pain. Tr. 18. Dr. Holladay's consultative report supports the RFC assessed by the ALJ. On the other hand, the reports from treating physicians Dr. Coleman and Dr. Nwokolo are at odds with the ALJ's RFC and indicate greater limitations.

Ordinarily, "the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." Moore v. Sullivan, 919 F.2d 901, 905 (5th Cir.1990). Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions that have been recognized include statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Scott, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id. See Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ's discussion of her reasons for affording different degrees of weight to the physicians' opinions would ordinarily suffice to require affirmance under this court's limited standard of review. In this case, however, some mistakes were made that undermine the court's confidence that the reasons expressed by the ALJ were correct. For example, Dr. Nwokolo is (apparently) mischaracterized as an agency physician who merely reviewed medical records, when there is a strong indication that he was actually a treating physician, to whom significantly more deference would ordinarily be shown. There is also the likely mistaken conclusion that Plaintiff sat without a problem for more than 15 minutes (at a 10-minute hearing, during which there is an indication she stood mid-way through). (Perhaps Plaintiff sat for a time before or after the hearing was being transcribed, but that is not stated in the record.) There is also some concern arising from the lack of discussion by ALJ Griswold of treating physician Dr. Coleman's report. She did, however, refer to ALJ Butler's decision, which did include a discussion of Dr. Coleman's opinions, but it would have been preferable had the final decision contained express evidence that the treating physician's opinion was considered. Finally, the ALJ appeared to pay particular heed to Dr. Holladay's statement that scoliosis is considered to be a painless disorder. Plaintiff cites in her brief at footnote 10 a treatise written by a former chief medical consultant for the agency, which includes a statement that scoliosis is "associated with pain but not neurological impairment." The passage continues that there is a great deal of individual variation in how much pain scoliosis victims experience, but it can result in significant limitations on lifting and carrying capacity and is often not relieved by sitting. The court has reviewed other

medical information that reports, generally, that adults with scoliosis may or may not have back pain, and it is often hard to determine whether scoliosis is the cause of back pain, but the condition can certainly cause severe back pain and even difficulty breathing.

Perhaps the ALJ did consider Dr. Coleman's opinions and afforded them less weight for precisely the reasons expressed by ALJ Butler. And perhaps there is an explanation for the apparently erroneous statement about Plaintiff sitting through the hearing, and perhaps the ALJ would have afforded Dr. Nwokolo's opinions less weight even had she realized that he was a treating physician who really did prescribe Plaintiff medicine as opposed to an agency physician. And perhaps Dr. Holladay or other physician could easily articulate a medical explanation as to why the particular form or degree of scoliosis suffered by Plaintiff is not associated with pain or is not thought to cause Plaintiff pain.

All of that, however, is speculation, and the doubts that linger around these significant issues deprive the written decision under review from support by substantial evidence. The appropriate course of action is to reverse the decision and remand the case for further proceedings that may include the clarification of Dr. Nwokolo's role, the gathering of any related medical reports, the gathering of additional medical information about the likelihood of pain being associated with the scoliosis experienced by Plaintiff, and the submission of

other beneficial information.[1] An ALJ can then assess the evidence and explain the basis for the Commissioner's decision.

Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 10 days after being served with a copy, shall bar that

---

[1] On remand, Plaintiff and the agency may further explore any other relevant matters. See 20 C.F.R. § 404.983 (following a federal court remand, "[a]ny issues relating to your claim may be considered by the administrative law judge whether or not they were raised in the administrative proceedings leading to the final decision in your case."). See also Social Security Law and Practice, § 55:74 (there is ordinarily "no limit on a claimant's supplementing the record on remand" after a sentence four or sentence six remand).

party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See <u>Douglass v. U.S.A.A.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED at Shreveport, Louisiana, this 10th day of February, 2006.

_____
MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE